**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

**DEANNA MITCHELL, JILL HAYNES, ALEXIS TANNER and LATOYA FAIR,** individually, and on behalf of others similarly situated,

Plaintiffs,

vs.

**ELEVANCE HEALTH, INC.**, an Indiana Corporation,

Defendant.

Case No.: 26-cv-01243-RLY-TAB

Hon.: Judge Richard L. Young

Hon.: Mag. Judge Tim A. Baker

---

**AMENDED COLLECTIVE AND CLASS ACTION[1]**
**COMPLAINT AND RELIANCE ON JURY DEMAND**

Plaintiffs, DEANNA MITCHELL ("Mitchell" of "Plaintiff Mitchell"), JILL HAYNES ("Haynes" or "Plaintiff Haynes"), ALEXIS TANNER ("Tanner" or "Plaintiff Tanner"), and LATOYA FAIR ("Fair" or "Plaintiff Fair") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant ELEVANCE HEALTH, INC. ("Defendant" or "Elevance"), and state as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New York Labor Law, Missouri Minimum Wage Law, the South Carolina Payment of Wages Act, Nevada law, and for common law claims of breach of

[1] As additional plaintiffs with standing to assert additional state law class action claims opt in to the case, Plaintiffs intend to amend their Complaint to include such additional state law claims.

contract and/or unjust enrichment.

2. Elevance is one of the largest for-profit health insurers in the United States and operates in all fifty (50) states, the District of Columbia, and Puerto Rico.

3. Defendant offers consumers and businesses throughout the country assistance with health insurance products.[2] According to its website, Defendant "offer[s] health plans and clinical, behavioral, pharmacy, and complex-care solutions that promote whole health."

4. Defendant offers health plans under the brand names Anthem and Wellpoint, and also through its affiliated companies which include Amerigroup, DeCare Dental, HealthLink, Health Sun, MMM, Simply Healthcare Plans, Unicare and Wellpoint Federal. *See id.*; *see also* https://www.elevancehealth.com/who-we-are/companies/affiliated-companies-and-health-plans.

5. Defendant offers coverage options for large and small employers, plans for individuals and families, as well as Medicare and Medicaid coverage and care coordination.

6. To support its business operations, Defendant employs remote and brick and mortar hourly employees throughout the country to provide the consumers and businesses with customer support services.

7. These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of internal job titles, including "Customer Care Representative" "Customer Service Representative," and "Customer Support Representative," "Senior Customer Service Representative," "Senior Customer Support Representative," "Member Services Representative," and "Business Services Representative." However, the material aspects of their employment, duties, and the wage and hour violations complained of herein are the same for all CSRs.

---

[2] *See* https://www.elevancehealth.com/who-we-are/companies (last visited May 12, 2026).

8. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

9. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

10. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

11. Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

12. Defendant requires its CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

13. This policy results in CSRs not being paid for all time worked, including overtime.

14. While performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

15. The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an

integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

16. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

17. Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

18. Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

19. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

20. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

21. Additionally, despite both state and federal law clearly requiring overtime premiums to be paid for all hours worked in excess of forty in a workweek, Defendant often failed to pay overtime premiums for recorded hours worked in excess of forty and instead unjustifiably paid CSRs at their regular rate for overtime hours.

22. Defendant also paid CSRs non-discretionary performance-based incentive pay, which Defendant failed to incorporate into the calculation of the CSRs' overtime rates, in violation of the FLSA and its governing regulations.

23. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive

and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

24. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

25. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

26. This Court has general personal jurisdiction over Defendant and all the claims alleged herein, because Defendant is an Indiana For-Profit Corporation and is headquartered in this District.

27. Defendant maintains its principal office and corporate headquarters at 220 Virginia Avenue, Indianapolis, IN 46204.

28. This Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

29. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

30. Defendant's annual sales exceed $500,000 and Defendant has more than two (2) employees, so the FLSA applies in this case on an enterprise basis.

31. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the

production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of interstate phone lines in the performance of their job duties.

32. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

33. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

34. This Court has personal jurisdiction over Defendant because it conducts business within the state of Indiana, has its principal place of business and headquarters in Indiana, is an Indiana Corporation, and lists Indianapolis as its "domicile" and employs individuals within the state of Indiana.

35. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Indiana, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

36. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

37. Plaintiff DEANNA MITCHELL ("Plaintiff Mitchell") is a Missouri resident who worked for Defendant as a CSR in Missouri and Indiana within the last three (3) years.

38. Defendant paid Plaintiff Mitchell for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $20.23 per hour, plus non-discretionary incentive payments.

39. Plaintiff Mitchell signed a consent to join this collective action lawsuit. **D.E. 2-1.**

40. Plaintiff JILL HAYNES ("Plaintiff Haynes") is a New York resident who has worked for Defendant as a CSR in New York within the last three (3) years.

41. Defendant paid Plaintiff Haynes for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $23.88 per hour, plus non-discretionary incentive payments.

42. Plaintiff Haynes signed a consent to join this collective action lawsuit. **D.E. 2-1.**

43. Plaintiff ALEXIS TANNER ("Plaintiff Tanner") is a Nevada resident who has worked for Defendant as a CSR in Nevada within the last three (3) years.

44. Defendant paid Plaintiff Tanner Defendant for her services in the form of an hourly wage, for all credited hours worked, plus non-discretionary incentive payments.

45. Plaintiff Tanner signed a consent to join this collective action lawsuit. **D.E. 31-1.**

46. Plaintiff LATOYA FAIR ("Plaintiff Fair") is a South Carolina resident who has worked for Defendant as a CSR in South Carolina within the last three (3) years.

47. Defendant paid Plaintiff Fair Defendant for her services in the form of an hourly wage, for all credited hours worked, plus non-discretionary incentive payments.

48. Plaintiff Fair signed a consent to join this collective action lawsuit. **D.E. 17-1.**

49. Defendant is an Indiana Corporation, headquartered in Indianapolis, Indiana, with its principal place of business located at 220 Virginia Avenue Indianapolis, IN 46204.

## GENERAL ALLEGATIONS

50. Defendant employed Plaintiffs as CSRs within the last three (3) years.

51. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) primarily taking in-bound calls from individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

52. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that regularly require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

53. These schedules result in CSRs routinely working overtime.

54. Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

55. At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

56. Defendant was also responsible for training its CSRs' and provided continuing education in their role as CSRs.

57. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

58. These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

59. Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

60. Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts.

61. Defendant furthermore enforces their policy of requiring computer networks, programs and applications be open and ready at the commencement of a CSR's shift through their performance metrics and schedule adherence policies.

62. More specifically, being clocked in but unavailable to take or make calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

63. Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries from consumers.

64. Defendant's performance metrics also graded CSRs on how quickly they could resolve his or her calls.

65. Defendant also evaluates CSRs based on their "Availability," meaning the amount of time they are available to take calls while clocked-in.

66. A CSR cannot be prepared to take calls, and thus make themselves available, without having loaded and logged into all of their computer systems.

67. Together, these performance metrics necessarily require that CSRs be logged into

all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

68. In order to be fully prepared to promptly and efficiently handle calls, CSRs were required to have loaded and logged into all of their computer programs at the beginning of the shift.

69. Furthermore, CSRs are graded on the amount of time they are clocked in but unavailable to take calls.

70. Defendant subjected Plaintiffs and all other CSRs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

71. Additionally, while Defendant routinely scheduled CSRs to work forty hours per week, Defendant also prohibited CSRs from working overtime hours without advanced approval.

72. Accordingly, recording the time spent working outside of their scheduled shift would violate Defendant's prohibition on unapproved overtime.

73. Plaintiffs' supervisors deterred them from recording work time outside of their scheduled shifts.

74. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

75. Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

76. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

77. In fact, as outlined below, Defendant maintains a common plan and policy pursuant

to which they fail to pay their CSRs for no less than fifteen (15) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

78. This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

### A. Pre-Shift Off-the-Clock Work – Computer Bootup

79. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

80. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

81. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging twelve (12) to fifteen (15) minutes per day, and the tasks can take longer (thirty (30) minutes or even more) if CSRs experience technical problems with the computer, software, and/or applications.

82. Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and loading and logging into a number of essential work programs. Once connected to the VPN, CSRs are required to load and log-into a number of essential work programs. These programs included: VDI, Emulators A-D, Jabber, Finesse, Procedure Flow, Sharepoint, FYI Blue, BAM, UPC Tracker, RPP, VMS, RPI, TMG, Vantage, MPUI, Claims GUI, Citrix, Facets/Montana, Automation Box, Microsoft Teams, Microsoft Outlook, and Blue Source.

83. Although there was some variation in computer programs used amongst various

CSR positions, the core and essential programs used were the same for all CSRs.

84. The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept or make calls.

85. Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

86. Instead, Defendant maintains attendance policies that require them to be call-ready at their scheduled start time and discourage them from recording hours outside of their regularly scheduled shifts.

87. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than twelve (12) minutes per day of work performed in connection with the above pre-shift activities.

### B. Meal-Period Off-the-Clock Work

88. Defendant provides its CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

89. In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

90. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker

> who is required to be at his machine is working while eating. (emphasis added).

91. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

92. On most days, CSRs spend approximately two (2) to three (3) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

93. Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

**C. <u>Post-Shift Off-the-Clock Work</u>**

94. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

95. The shutdown and logout process, along with post-shift claims processing, requires another one (1) to two (2) minutes of off the clock work per shift.

96. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

97. Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

98. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. Exemplary Pay-Periods to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

99. An example of specific workweeks where Defendant failed to pay Plaintiff Mitchell all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 01/16/2023 through 01/29/2023**

- Plaintiff Mitchell was paid at a rate of $16.50 per hour for seventy-two (72) regular hours and eight (8) holiday hours during the pay period and was credited with 8.03 overtime hours. Defendant paid Plaintiff overtime compensation only for the overtime hours recorded and credited her with as having worked.

- In addition to the hours Defendant recorded, Plaintiff Mitchell performed uncompensated pre-shift work of approximately twelve (12) to fifteen (15) minutes per shift, uncompensated work during meal periods of approximately two (2) to three (3) minutes per shift, and uncompensated post-shift work of approximately one (1) to two (2) minutes per shift, five (5) shifts per week.

- As a result, Plaintiff Mitchell should have been compensated for an additional seventy-five (75) to one hundred (100) minutes of overtime work during the pay period at her overtime rate. **EXHIBIT 1**, Mitchell Paystub.

100. Similarly, an example of specific workweeks where Defendant failed to pay Plaintiff Haynes all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 5/4/2026-5/17/2026**

- Plaintiff Haynes was paid at a rate of $23.88 per hour for eighty (80) regular hour during the pay period and was credited with approximately 5.08 overtime hours. Defendant paid Plaintiff Haynes only for the overtime hours it recorded and credited her with as having worked.

- In addition to the hours Defendant recorded, Plaintiff Haynes performed uncompensated pre-shift work of approximately twelve (12) to fifteen (15) minutes per shift, uncompensated work during unpaid meal periods of approximately two (2) to three (3) minutes per shift, and uncompensated post-shift work of one (1) to two (2) minutes per shift, five (5) shifts per week.

- As a result, Plaintiff Haynes should have been compensated for an additional seventy-

five (75) to one hundred (100) minutes of overtime work during the pay period at her overtime rate. **EXHIBIT 2**, Haynes Paystub.

101. All Plaintiffs similarly routinely worked over forty (40) hours or more hours per week and did not receive overtime premium pay for all hours worked.

102. The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

### E. <u>Defendant Benefitted From the Uncompensated Off-the-Clock Work</u>

103. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

104. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

105. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

106. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

107. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA and various parallel state wage and hour laws.

108. At all relevant times, Defendant used its attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

109. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

110. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

111. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

112. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

113. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

114. Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

115. Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

### F. Defendant's Failure to Include Incentive Payments in the Overtime Rate Calculation

116. In addition to their regular hourly rate, CSRs were eligible for certain performance-based incentive payments.

117. In violation of the FLSA, Defendant failed to include these payments in the calculation of the CSRs overtime rates, which resulted in the underpayment of overtime.

118. Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29

C.F.R. §778.108.

119. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

120. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

121. Defendant's compensation scheme, which included an hourly rate, plus incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

122. An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

123. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. *Id.*

124. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id.*

125. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id.*

126. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.

127. The burden is on Defendant to establish that any payment should be excluded.

128. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

129. Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

130. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).

131. The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

132. Because Defendant's compensation scheme failed to incorporate all the non-discretionary bonuses, incentive pay, and shift differentials received in the regular rate of pay (and resulting overtime rates of pay), Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

133. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of the original Complaint [D.E. 1] up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

134. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

135. Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

136. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

137. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

138. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant and failing to compensate the FLSA Collective for the overtime work performed; and

c. Willfully failing to include all renumeration in the calculation of the CSRs overtime rates.

139. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

140. Defendant's unlawful conduct has been widespread, repeated and consistent.

141. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

142. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

143. The employment relationships between Defendant and every proposed FLSA Collective member are the same/similar and differ only by name, location and rate of pay.

144. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – pertain to damages.

145. Moreover, the key issues do not vary substantially among the proposed FLSA Collective members.

146. Many similarly situated current and former CSRs have been underpaid in violation

of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

147. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

148. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

149. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

150. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 NEW YORK CLASS ACTION ALLEGATIONS**

151. Plaintiff Haynes bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in New York at any time during the six years preceding the filing of the original Complaint [D.E. 1] up through and including judgment.***

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

152. The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical.

153. Plaintiff Haynes reasonably estimates that there are hundreds of Rule 23 New York Class members.

154. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

155. There is a well-defined community of interest among Rule 23 New York Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class.

156. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 New York Class member spend on setting up their workstation is compensable time;

b. Whether the pre-, mid-, and post-shift time Rule 23 New York Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

c. Whether Defendant breached its agreement with Plaintiff and the Rule 23 New York Class to pay for all hours worked at the agreed upon rate; and

d. Whether the Rule 23 New York Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

157. Plaintiff Haynes's claims are typical of those of the Rule 23 New York Class in that they and all other Rule 23 New York Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

158. Plaintiff Haynes's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 New York Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New York Class members.

159. Haynes will fully and adequately protect the interests of the Rule 23 New York Class and she has retained counsel who are qualified and experienced in the prosecution of New York wage and hour class actions.

160. Neither Haynes nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New York Class.

161. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

162. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

163. This case will be manageable as a Rule 23 Class action.

164. Haynes and her counsel know of no unusual difficulties in this case and Defendant and its clients and vendors all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

165. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

166. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New York Class and declaratory relief is appropriate in this case with respect to the Rule 23 New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**<u>RULE 23 MISSOURI CLASS ACTION ALLEGATIONS</u>**

167. Plaintiff Mitchell brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in Missouri at any time during the five years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Rule 23 Missouri Class"). Plaintiffs reserve the right to amend the

putative class definition if necessary.

168. The members of the Rule 23 Missouri Class are so numerous that joinder of all Rule 23 Missouri Class members in this case would be impractical.

169. Plaintiff Mitchell reasonably estimates that there are hundreds of Rule 23 Missouri Class members.

170. Rule 23 Missouri Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

171. There is a well-defined community of interest among Rule 23 Missouri Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Missouri Class.

172. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 Missouri Class member spend on setting up their workstation is compensable time;

b. Whether the pre-, mid-, and post-shift time Rule 23 Missouri Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

c. Whether Defendant breached its agreement with Plaintiff and the Rule 23 Missouri Class to pay for all hours worked at the agreed upon rate; and

d. Whether the Rule 23 Missouri Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

173. Plaintiff Mitchell's claims are typical of those of the Rule 23 Missouri Class in that they and all other Rule 23 Missouri Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

174. Plaintiff Mitchell's claims arise from the same policies, practices, promises and

course of conduct as all other Rule 23 Missouri Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Missouri Class members.

175. Mitchell will fully and adequately protect the interests of the Rule 23 Missouri Class and she has retained counsel who are qualified and experienced in the prosecution of Missouri wage and hour class actions.

176. Neither Mitchell nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Missouri Class.

177. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Missouri Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

178. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

179. This case will be manageable as a Rule 23 Class action.

180. Mitchell and her counsel know of no unusual difficulties in this case and Defendant and its clients and vendors all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

181. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

182. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Missouri Class and declaratory relief is appropriate in this case with respect to the Rule

23 Missouri Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NEVADA CLASS ACTION ALLEGATIONS**

183. Plaintiff Tanner brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in Nevada at any time during the three years preceding the filing of the original Complaint [D.E. 1] up through and including judgment.***

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

184. The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical.

185. Plaintiff Tanner reasonably estimates that there are at least fifty (50) Rule 23 Nevada Class members.

186. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

187. There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class.

188. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 Nevada Class member spend on setting up their workstation is compensable time;

b. Whether the pre-, mid-, and post-shift time Rule 23 Nevada Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

c. Whether Defendant breached its agreement with Plaintiff and the Rule 23

Nevada Class to pay for all hours worked at the agreed upon rate; and

d. Whether the Rule 23 Nevada Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

189. Plaintiff Tanner's claims are typical of those of the Rule 23 Nevada Class in that they and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

190. Plaintiff Tanner's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

191. Tanner will fully and adequately protect the interests of the Rule 23 Nevada Class and she has retained counsel who are qualified and experienced in the prosecution of Nevada wage and hour class actions.

192. Neither Tanner nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

193. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

194. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

195. This case will be manageable as a Rule 23 Class action.

196. Tanner and her counsel know of no unusual difficulties in this case and Defendant and its clients and vendors all have advanced, networked computer and payroll systems that will

allow the class, wage, and damages issues in this case to be resolved with relative ease.

197. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

198. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS**

199. Plaintiff Fair brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in South Carolina at any time during the three years preceding the filing of the original Complaint [D.E. 1] up through and including judgment.***

(hereinafter referred to as the "Rule 23 South Carolina Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

200. The members of the Rule 23 South Carolina Class are so numerous that joinder of all Rule 23 South Carolina Class members in this case would be impractical.

201. Plaintiff Fair reasonably estimates that there are at least fifty (50) Rule 23 South Carolina Class members.

202. Rule 23 South Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

203. There is a well-defined community of interest among Rule 23 South Carolina Class members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 South Carolina Class.

204. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 South Carolina Class member spend on setting up their workstation is compensable time;

b. Whether the pre-, mid-, and post-shift time Rule 23 South Carolina Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

c. Whether Defendant breached its agreement with Plaintiff and the Rule 23 South Carolina Class to pay for all hours worked at the agreed upon rate; and

d. Whether the Rule 23 South Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

205. Plaintiff Fair's claims are typical of those of the Rule 23 South Carolina Class in that they and all other Rule 23 South Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

206. Plaintiff Fair's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

207. Fair will fully and adequately protect the interests of the Rule 23 South Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of South Carolina wage and hour class actions.

208. Neither Fair nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

209. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

210. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

211. This case will be manageable as a Rule 23 Class action.

212. Fair and her counsel know of no unusual difficulties in this case and Defendant and its clients and vendors all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

213. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

214. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

215. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Nationwide Rule 23 Class"). Plaintiffs reserve the right to amend this definition as necessary.

216. Plaintiffs' common law Rule 23 allegations are bought to the extent the FLSA does not cover such claims and no state statutes exist for a particular CSR to recover unpaid straight time wages.

217. The members of the Nationwide Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.

218. Plaintiffs reasonably estimates there are thousands of Nationwide Rule 23 Class members.

219. Nationwide Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

220. There is a well-defined community of interest among members of the Nationwide Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Nationwide Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether a contract governed the employment of Nationwide Rule 23 Class members;

b. Whether the pre-, mid-, and post-shift time Nationwide Rule 23 Class members spend on setting up their workstation is compensable time;

c. Whether the pre-shift time that Nationwide Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

d. Whether the time that Nationwide Rule 23 Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

e. Whether the time that the Nationwide Rule 23 Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

f. Whether Defendant's failure to pay the Nationwide Rule 23 Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and/or whether Defendant was unjustly enriched.

221. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other members Nationwide Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

222. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Nationwide Rule 23 Class's claims and their legal theories are based on the same legal theories as all other members of the Nationwide Rule 23 Class.

223. Plaintiffs will fully and adequately protect the interests of the Nationwide Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.

224. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Rule 23 Class.

225. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Nationwide Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

226. Prosecution of this case as a Nationwide Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

227. This case will be manageable as a Rule 23 class action.

228. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant and its clients and vendors have advanced, networked computer and payroll systems

that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

229. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

230. Because Defendant acted and refused to act on grounds that apply generally to the Nationwide Rule 23 Class and declaratory relief is appropriate in this case with respect to the Nationwide Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the FLSA, 29 U.S.C. § 201, *et seq*.**
**Failure to Pay Overtime Wages**

231. Plaintiffs re-allege and incorporate all previous paragraphs herein.

232. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

233. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

234. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

235. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

236. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g)

of the FLSA.

237. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fifteen (15) to twenty (20) minutes of off-the-clock work booting up and shutting down computer systems per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

238. At all time relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than ten (10) to twenty (20) minutes performing off-the-clock work per shift related to assembling and disassembling their workstations.

239. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

240. As demonstrated above, Defendant routinely failed to pay overtime premiums for hours worked over forty.

241. Defendant's violations of the FLSA were knowing and willful.

242. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

243. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

244. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 New York Class Action)**
**New York Labor Law, N.Y. Lab. Law. §§ 190, *et seq.*, 650 *et seq.***

245. Plaintiff Haynes re-alleges and incorporates all previous paragraphs herein.

246. Haynes brings this Count on behalf of herself and on behalf of the Rule 23 New York Class.

247. The promises made by Defendant to compensate CSRs on an *hourly rate for all hours worked* (the agreement) is binding upon Defendant for purposes of the New York Labor Law (NYLL) discussed herein.

248. Indeed, Plaintiff Haynes and every other New York Class Member had an agreement with Defendant that they would be paid based at their agreed upon hourly rate (and overtime rate when applicable) for *all* hours worked.

249. Defendant promised all CSRs they would be paid an hourly wage for *all* hours worked.

250. As discussed herein, Defendant failed to pay Plaintiff Haynes and the Rule 23 New York Class for all wages (regular and overtime) owed.

251. Through the implementation of their written timekeeping and attendance policies, as well as the verbal representations made by Defendant's management to CSRs regarding their attendance, scheduling, and hourly compensation, Defendant promised Plaintiff Haynes and the Rule 23 New York Class payment at their regular hourly rate for *all* hours worked in exchange for the performance of the CSRs' job duties.

252. Plaintiff Haynes accepted that offer, performed the duties of a CSR for Defendant, but Defendant breached their agreement with Plaintiff Haynes and the Rule 23 New York class by failing to pay them for *all* hours worked as promised.

253. At all times relevant to the action, Defendant was an employer covered by the mandates of the NYLL, and Plaintiff Haynes and the Rule 23 New York Class are employees entitled to the NYLL's protections.

254. The NYLL requires employers to pay employees at least the applicable minimum wage for all hours worked and overtime compensation at one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) in a workweek. *See* N.Y. La. Law §§ 652, 663; 12 N.Y.C.R.R. § 142-2.2.

255. Under N.Y. Lab. Law § 198, employees who are not paid wages dues and owing may recover the full amount of their unpaid wages, together with liquidated damages equal to one hundred percent (100%) of the total amount of wages found to be due, reasonable attorneys' fees, costs, prejudgment interest, and such other relief as the Court deems appropriate.

256. By excluding compensable pre-shift, mid-shift, meal-break, and post-shift work activities from compensable time, Defendant failed to pay Plaintiff Haynes and the Rule 23 New York class all wages owed under the New York Labor Law.

257. By failing to include all compensable hours worked in calculating Plaintiff Haynes' and Rule 23 New York class members' regular and overtime damages, Defendant violated the NYLL.

258. Defendant violated the NYLL by regularly and repeatedly failing to compensate Plaintiff Haynes and the Rule 23 New York Class for all hours worked, including overtime hours worked in excess of forty (40) in a workweek.

259. As a result, Plaintiff Haynes and the Rule 23 New York Class have suffered loss of income and other damages.

260. Accordingly, Plaintiff Haynes and the Rule 23 New York Class are entitled to

recover unpaid wages owed, liquidated damages, pre-judgment interest, attorneys' fees, costs, and all other relief available under the NYLL.

**COUNT III**
**(Rule 23 Missouri Class Action)**
**Missouri Minimum Wage Law, §§ 290.500, *et seq*.**

261. Plaintiff Mitchell re-alleges and incorporates all previous paragraphs herein.

262. Mitchell brings this Count on behalf of herself and on behalf of the Rule 23 Missouri Class.

263. The promises made by Defendant to compensate CSRs on an *hourly rate for all hours worked* (the agreement) is binding upon Defendant for purposes of the Missouri Minimum Wage Law (MMWL) discussed herein.

264. Indeed, Plaintiff Mitchell and every other Missouri Class Member had an agreement with Defendant that they would be paid based at their agreed upon hourly rate (and overtime rate when applicable) for *all* hours worked.

265. Defendant promised all CSRs they would be paid an hourly wage for *all* hours worked.

266. As discussed herein, Defendant failed to pay Plaintiff Mitchell and the Rule 23 Missouri Class for all wages (regular and overtime) owed.

267. Through the implementation of their written timekeeping and attendance policies, as well as the verbal representations made by Defendant's management to CSRs regarding their attendance, scheduling, and hourly compensation, Defendant promised Plaintiff Mitchell and the Rule 23 Missouri Class payment at their regular hourly rate for *all* hours worked in exchange for the performance of the CSRs' job duties.

268. Plaintiff Mitchell accepted that offer, performed the duties of a CSR for Defendant,

but Defendant breached their agreement with Plaintiff Mitchell and the Rule 23 Missouri class by failing to pay them for *all* hours worked as promised.

269. At all times relevant to the action, Defendant was an employer covered by the mandates of the MMWL, and Plaintiff Mitchell and the Rule 23 Missouri Class are employees entitled to the MMWL's protections.

270. The MMWL requires employers to compensate non-exempt employees at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours inn a workweek. Mo. Rev. Stat. § 290.505.

271. Under Mo. Rev. Stat. § 290.527, any employer who pays an employee less wages than those to which the employee is entitled under the MMWL is liable for the full amount of the unpaid wages, an additional amount equal to twice the unpaid wages as liquidated damages, costs, and reasonable attorneys' fees.

272. The employee may bring any legal action necessary to collect such wages.

273. By excluding compensable pre-shift, mid-shift, meal-break, and post-shift work activities from compensable time, Defendant failed to pay Plaintiff Mitchell and the Rule 23 Missouri Class all wages owed under the MMWL.

274. Defendant violated the MMWL by regularly and repeatedly failing to compensate Plaintiff Mitchell and the Rule 23 Missouri Class for all hours worked, including overtime hours worked in excess of forty (40) in a workweek.

275. As a result, Plaintiff Mitchell and the Rule 23 Missouri Class have suffered loss of income and other damages.

276. Accordingly, Plaintiff Mitchell and the Rule 23 Missouri Class are entitled to recover unpaid wages owed, liquidated damages equal to twice the unpaid wages, attorneys' fees,

costs and all other relief available under the MMWL.

**COUNT IV**
**Recovery of Overtime Compensation of Overtime Under the NYLL**

277. Plaintiff Haynes re-alleges and incorporates all previous paragraphs herein.

278. Haynes brings this Count on behalf of herself and on behalf of the Rule 23 New York Class.

279. At all relevant times, Plaintiff Haynes was an employee and Defendant was an employer within the meaning of the NYLL.

280. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant.

281. Defendant has failed to pay Plaintiff Haynes the overtime wages to which she was entitled under the NYLL.

282. By Defendant's failure to pay Plaintiff Haynes overtime wages for hours worked in excess of forty (40) hours per week, it has willfully violated NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to, the regulations in N.Y. Comp. Code R. & Regs., tit. 12 § 142.

283. Due to Defendant's violations of the NYLL, Plaintiff Haynes is entitled to recover from Defendant, her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**COUNT V**
**Recovery of Minimum Wage Compensation Under the NYLL**

284. Plaintiff Haynes re-alleges and incorporates all previous paragraphs herein.

285. Haynes brings this Count on behalf of herself and on behalf of the Rule 23 New York Class.

286. The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff Haynes.

287. Defendant failed to pay Plaintiff Haynes at the applicable minimum wage for all hours/weeks worked.

288. Due to Defendant's violations of the NYLL, Plaintiff Haynes is entitled to recover from Defendant her unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonably attorneys' fees and costs, and pre-judgment and post-judgment interest.

**COUNT VI**
**Failure to Provide Accurate Wage Statements Under NYLL**

289. Plaintiff Haynes re-alleges and incorporates all previous paragraphs herein.

290. Haynes brings this Count on behalf of herself and on behalf of the Rule 23 New York Class.

291. Defendant failed to supply Plaintiff Haynes with accurate statements of wages as required under the NYLL, Article 6, § 195(3).

292. Specifically, Defendant failed to provide an accurate number of hours worked by Plaintiff Haynes because Defendant failed to list the time Plaintiff Haynes worked or her regular rate of overtime rates of pay.

293. Through their knowing or intentional failure to provide Plaintiff Haynes with the accurate wage statements required under the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

294. As a result of Defendant's failure to provide Plaintiff Haynes with accurate wage statements, Plaintiff Haynes has suffered mental distress and anguish, because she has been unable to ascertain amounts due to her under the NYLL versus those paid and has been left to question how much money he has been underpaid.

295. Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff Haynes is entitled to statutory penalties, reasonable attorneys' fees, costs, and injunctive relief and declaratory relief, as provided for by NYLL, Article 6, §198(1-d).

**COUNT VII**
**Violation of New York Labor Law §§ 190 et seq.**
**Failure to Provide Written Notice of Wages, etc.**

296. Plaintiff Haynes re-alleges and incorporates all previous paragraphs herein.

297. Haynes brings this Count on behalf of herself and on behalf of the Rule 23 New York Class.

284. At the inception of Plaintiff Haynes' employment, and at all points thereafter, Defendant failed to supply Plaintiff Haynes with written notice of the terms of her employment, as required by the NYLL.

285. Through its knowing or intentional failure to provide Plaintiff Haynes with the written notice required under the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

286. Because Defendant failed to provide Plaintiff Haynes with written notice, Plaintiff Haynes was unaware of she is entitled to overtime wages, her proper wages, her proper rates of pay, the contact information for Defendant's main office.

287. As a result, Plaintiff Haynes did not know how much she was legally entitled to earn while employed by Defendant and did not know who she should complain to regarding Defendant's failure to pay her overtime wages when she worked in excess of forty (40) hours a week.

288. Defendant's failure to provide the legally-required written notice directly resulted in a significant delay in Plaintiff Haynes asserting her rights to full and proper overtime

compensation.

289. As a direct result, Plaintiff Haynes has had a worse credit rating than she otherwise would have had, because her income has been artificially reduced.

290. Thus, Plaintiff Haynes has had greater difficulty obtaining loans and other credit and the terms of the loans/credit obtained have been less favorable (i.e. higher interest rates).

291. Without access to traditional avenues for borrowing money and/or financing purchases, Plaintiff Haynes was required to resort to making more purchases on high interest credit cards, which in turn further negatively impacted her credit and plunged her further into debt.

292. Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff Haynes is entitled to statutory penalties, reasonable attorneys' fees, costs, and injunctive relief and declaratory relief, as provided for by NYLL, Article 6, §198(1-d).

**COUNT VIII**
**Recovery of Non-Overtime Wages Under South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, 41-10-30, 41-10-40, 41-10-50, and 41-10-80**

293. Plaintiff Fair re-alleges and incorporates all previous paragraphs herein.

294. Fair brings this Count on behalf of herself and on behalf of the Rule 23 South Carolina Class.

295. Plaintiff Fair was employed by Defendant in South Carolina as a CSR from approximately October 9, 2023, through March 2024.

296. Defendant was Plaintiff Fair's employer within the meaning of the South Carolina Payment of Wages Act ("SCPWA") because Defendant employed Plaintiff Fair and exercised control over Plaintiff Fair's work, pay, work schedule, and conditions of employment.

297. Plaintiff Fair was an employee under the SCPWA and not merely a contractor because Defendant exercised actual or retained control over the means and manner of Plaintiff

Fair's work, required Plaintiff Fair to perform integral services for Defendant's business, and controlled Plaintiff Fair's compensation and work conditions.

298. At the time of hire, Defendant or its agent notified Plaintiff Fair in writing of Plaintiff Fair's agreed rate of pay, the time and place of payment, and the deductions that Defendant claimed it might make, as required by S.C. Code Ann. § 41-10-30.

299. Defendant agreed to pay Plaintiff Fair hourly wages and other specified compensation for work performed.

300. The SCPWA defines "wages" broadly to include all amounts at which labor or service is rendered, whether the amount is fixed or determined by time, task, piece, commission, or another method of calculation.

301. Plaintiff Fair performed the aforementioned compensable non-overtime work for which Defendant failed to pay the agreed wages.

302. Defendant failed to pay Plaintiff Fair the agreed wages when due, failed to pay Plaintiff Fair all wages due within the applicable pay period, and/or made deductions from Plaintiff Fair's wages without the written notice and authorization required by S.C. Code Ann. § 41-10-40.

303. To the extent Plaintiff Fair separated from employment, Defendant also failed to pay all wages due within forty-eight hours of separation or by the next regular payday not to exceed thirty days, as required by S.C. Code Ann. § 41-10-50.

304. Defendant's withholding of Plaintiff Fair's earned wages was without a bona fide dispute as to Plaintiff Fair's entitlement to the unpaid amount, or, alternatively, Defendant failed to tender the undisputed portion of the wages while withholding the disputed portion.

305. Under S.C. Code Ann. § 41-10-80(C), an employee may recover in a civil action an amount equal to three times the full amount of unpaid wages, plus costs and reasonable attorney's fees, when the employer violates the SCPWA.

306. As a direct result of Defendant's conduct, Plaintiff Fair sustained damages including unpaid wages, statutory treble damages where warranted, costs, reasonable attorney's fees, and other relief authorized by law.

307. Plaintiff Fair requests unpaid wages; treble damages under S.C. Code Ann. § 41-10-80(C); costs; reasonable attorney's fees; prejudgment interest where authorized; and such other relief as the Court deems proper.

**COUNT IX**
**Non-Overtime Wages and Minimum Wages Under Nev. Rev. Stat. §§ 608.016, 608.020, 608.040, 608.050, 608.140, 608.250, and 608.260; Nev. Const. art. XV, § 16**

308. Plaintiff Tanner re-alleges and incorporates all previous paragraphs herein.

309. Tanner brings this Count on behalf of herself and on behalf of the Rule 23 Nevada Class.

310. Tanner was employed by Defendant in Nevada as a CSR from approximately September 5, 2023, through March 11, 2026.

311. Defendant was Tanner's employer because Defendant hired Tanner, controlled Tanner's schedule and assigned work, set or controlled Tanner's compensation, maintained or was obligated to maintain payroll records, and had the power to direct Tanner's work and terminate the employment relationship.

312. Tanner was Defendant's employee, because Tanner performed work integral to Defendant's business and Defendant retained substantial control over the economic and operational conditions of Tanner work.

313. Tanner performed compensable non-overtime work during the relevant period, including pre-shift/post-shift work and work through unpaid meal periods, as well as other uncompensated work.

314. Tanner worked non-overtime hours during some pay periods for which Defendant owed Plaintiff at least the agreed hourly rate and/or Nevada's applicable constitutional and statutory minimum wage.

315. Nevada's minimum-wage obligation derives from Article 15, Section 16 of the Nevada Constitution and is implemented through Nevada Revised Statutes §§ 608.250 and 608.260, with the applicable rate determined by the rate in effect during the relevant period.

316. Defendant failed to pay Tanner the full amount of wages earned for all compensable non-overtime hours and/or paid Tanner at an effective hourly rate below the minimum wage applicable during the relevant period.

317. Defendant did not have a lawful basis to withhold the unpaid wages, and the underpayment did not result from a valid written wage assignment, a lawful deduction, or a bona fide dispute as to the work performed or compensation due.

318. Nevada law requires employers to pay wages at least semimonthly, subject to statutory exceptions. NRS 608.020.

319. To the extent Tanner separated from employment, Defendant failed to timely pay all earned wages when due under NRS 608.040, and Defendant is liable for the statutory waiting-time penalty provided in NRS 608.050 if its failure to pay was willful.

320. Tanne is entitled to unpaid wages; statutory penalties, including any waiting-time penalty authorized by NRS 608.050; interest; costs; and reasonable attorney's fees under NRS 608.140.

321. Tanner requests unpaid straight-time and minimum wages; statutory damages and penalties, including waiting-time wages where established; reasonable attorney's fees and costs; interest; and all other appropriate relief.

**COUNT X**
**Overtime Compensation Under Nev. Rev. Stat. § 608.018; Nev. Admin. Code ch. 608**

322. Tanner realleges and incorporates the preceding allegations.

323. Tanner brings this Count on behalf of herself and on behalf of the Rule 23 Nevada Class.

324. Tanner was a nonexempt employee entitled to overtime compensation under NRS 608.018.

325. Tanner was not employed in a bona fide executive, administrative, professional, or outside-sales capacity, nor was Tanner subject to another statutory overtime exemption.

326. Defendant bears the burden of proving any claimed exemption, and any exemption must be applied consistently with Tanner's actual job duties rather than Tanner's job title alone.

327. In the vast majority of workweeks, with the inclusion of the aforementioned off-the-clock hours worked, Tanner worked more than forty hours.

328. For any period in which Tanner's regular rate was less than one and one-half times the applicable Nevada minimum wage, Tanner also worked more than eight hours in one or more twenty-four-hour periods.

329. NRS 608.018 requires payment at not less than one and one-half times an employee's regular rate for:

a. hours worked over forty in a workweek; and
b. for employees whose wage rate is less than one and one-half times the applicable minimum wage, hours worked in excess of eight in a workday or forty in a workweek.

330. Tanner was entitled to overtime calculated using her regular rate, calculated by including all remuneration required by law to be included in the regular rate and excluding only sums lawfully excludable.

331. Defendant knew or should have known Tanner worked the overtime hours because Tanner repeatedly advised Defendant of same and because Defendant was well-aware that it required Tanner and others to boot up their computers and applications necessary and integral to their work as CSRs off-the-clock.

332. Defendant failed to pay Tanner overtime compensation at one and one-half times Plaintiff's regular rate, for the overtime hours that were unrecorded in Defendant's timekeeping system.

333. Defendant's conduct violated NRS 608.018 and caused Tanner unpaid overtime damages.

334. Nevada Administrative Code chapter 608 supplies interpretive standards concerning wages and hours, including standards relevant to determining exempt status and overtime obligations, and should be applied to Tanner's actual duties and compensation arrangement.

335. Tanner is entitled to unpaid overtime wages, statutory relief authorized by Nevada law, reasonable attorney's fees under NRS 608.140, costs, prejudgment interest where authorized, and any additional damages or penalties available for Defendant's failure to timely pay earned wages.

336. Tanner requests unpaid overtime compensation; statutory damages and penalties as applicable; reasonable attorney's fees and costs; prejudgment interest; and all further relief the Court deems just and proper.

**COUNT XI**
**(Rule 23 Class Action)**
**Breach of Contract**

337. Plaintiffs reallege and incorporate all previous paragraphs herein.

338. This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours) and the CSR has no state statute to recover unpaid straight time wages (i.e. the Nationwide Rule 23 Class).

339. Upon information and belief, at all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other member of the Nationwide Rule 23 Class to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Nationwide Rule 23 Class members performed on Defendant's behalf.

340. Defendant's contractual promises to pay Plaintiffs and each member of the Nationwide Rule 23 Class's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the members of the Nationwide Rule 23 Class and the offer letters each of the members of the Nationwide Rule 23 Class member received from Defendant or its agent(s) at or about the beginning of their employment.

341. At or about the commencement of their employment, Defendant and/or Defendant's agent offered Plaintiffs and each member of the Nationwide Rule 23 Class employment and agreed to pay Plaintiffs an hourly rate of pay for all hours worked.

342. Plaintiffs and every other Nationwide Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift,

post-shift, and meal period activities, described herein.

343. By not paying Plaintiffs and every other Nationwide Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Nationwide Rule 23 Class.

344. On occasion, CSRs missed time from work causing them to work under forty (40) hours in a given week.

345. To the extent there is no other state law remedy available, Plaintiffs and the members of the Nationwide Rule 23 Class's remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than forty (40) hours per week.

346. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Nationwide Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**COUNT XII**
**(Rule 23 Class Action)**
**Unjust Enrichment**

347. Plaintiffs re-allege and incorporate all previous paragraphs herein.

348. This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours) and the CSR has no state statute to recover unpaid straight time wages (i.e. the Nationwide Rule 23 Class), and only the extent it is found that such CSRs lacked a contract with Defendant under which they can recover unpaid non-overtime wages.

349. This Count is pled in the alternative to Count XI and the other preceding counts, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

350. This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours), and to the extent that there is a finding that the parties lacked a contract providing for payment of hourly wages for all hours worked.

351. At all times relevant to this action, Defendant promised Plaintiffs and every other member of the Nationwide Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the members of the Nationwide Rule 23 Class performed for the benefit of Defendant.

352. Plaintiffs and every other member of the Nationwide Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

353. By not paying Plaintiffs and every other member of the Nationwide Rule 23 Class the agreed upon hourly wage for the off-the-clock work they performed each shift Defendant was unjustly enriched.

354. Plaintiffs and the members of the Nationwide Rule 23 Class performed off-the-clock work tasks at the request of and without objection by Defendant.

355. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every member of the Nationwide Rule 23 Class and enjoyed the benefits derived therefrom.

356. Upon information and belief, Defendant used the monies owed to Plaintiffs and every other member of the Nationwide Rule 23 Class to finance its various business ventures or pay its equity owners.

357. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the members of the Nationwide Rule 23 Class performed for

Defendant's benefit, without having compensated Plaintiffs and the Nationwide Rule 23 Class for the same.

358. Plaintiffs and the Nationwide Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Nationwide Rule 23 Classes were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

359. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other member of the Nationwide Rule 23 Class suffered damages, including but not limited to, loss of wages, plus applicable pre- and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, the Rule 23 New York Class, the Rule 23 Missouri Class, the Rule 23 South Carolina Class, the Rule 23 Nevada Class, and the Nationwide Rule 23 Class request judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein, and permitting prompt notice to issue to all similarly-situated employees;

b. Certifying this action as a class action (for the Rule 23 New York Class, Rule 23 Missouri Class, Rule 23 South Carolina Class, Rule 23 Nevada Class, and Nationwide Rule 23 (common law) Class, pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs state law claims under New York, Missouri, South Carolina, Nevada and common law;

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action members, the Rule 23 New York Class members, Rule 23 Missouri Class members the Rule 23 South Carolina members, the Rule 23 Nevada members, and the Nationwide Rule 23 members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective/Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the FLSA collective action and undersigned counsel as Class counsel for the same;

e. Designating Plaintiff Mitchell as the representative of the Rule 23 Missouri Class;

e. Designating Plaintiff Haynes as the representative of the Rule 23 New York Class;

f. Designating Plaintiff Fair as the representative of the Rule 23 South Carolina Class;

g. Designating Plaintiff Tanner as the representative of the Rule 23 Nevada Class;

h. Designating Plaintiffs as the representatives of the Nationwide Rules 23 Class;

i. Designating the undersigned as Class Counsel for the respective Rule 23 Classes;

j. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

k. Declaring Defendant's violation of the FLSA was willful and/or in reckless disregard of the FLSA;

l. Declaring Defendant violated the NYLL as cited herein;

m. Declaring Defendant violated the MMWL as cited herein;

n. Declaring Defendant violated South Carolina wage and hour law as cited herein;

o. Declarating Defendant violated Nevada wage and hour law as cited herein;

p. Declaring Defendant breached its contracts with the CSRs as cited herein;

q. Declaring Defendant was unjustly enriched, as explained herein;

r. Declaring Defendant's violations of the state laws was willful;

s. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Classes the full amount of damages and liquidated and/or treble damages available by law;

t. Awarding Plaintiff statutory penalties due to Defendants' failure to provide accurate wage notice and wage statements in violation of the NYLL;

u. Awarding reasonable attorneys' fees, penalty interest, and costs incurred by Plaintiffs in filing this action as provided by statute;

v. Awarding the issuance of civil penalties and forfeitures as discussed herein;

w. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

x. Awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 5, 2026

Respectfully Submitted,

**MORGAN & MORGAN, P.A.**

*/s/ Andrew R. Frisch*
Andrew R. Frisch
8151 Peters Road, Suite 4000
Phone: (954) WORKERS
Fax: (954) 327-3013
Email: AFrisch@forthepeople.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing has been furnished to the Clerk of the Court via the CM/ECF System, this 5th day of August 2026.

*/s/ Andrew R. Frisch*
Andrew R. Frisch, Esq.